**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

    Plaintiff,

**v.**                                                                     **No. 12-cr-3206 RB**

**STEPHEN JAMES MARTINEZ,**

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Defendant's Motion to Suppress and Memorandum in Support [Doc. 36] ("Motion"), filed May 1, 2013. On May 20, 2013, the United States filed its Response to Defendant's Motion to Suppress and Memorandum in Support [Doc. 45] ("Response"). Defendant has not replied, and the time for doing so has passed. *See* Notice of Hearing on Motion to Suppress [Doc. 41] (reply, if any, due June 3, 2013). The Honorable Robert C. Brack, United States District Judge, referred the Motion to the undersigned to make findings of fact and to recommend an ultimate disposition. Amended Order of Reference [Doc. 43]. An evidentiary hearing was held on the Motion June 4, 2013, during which the Defendant and the arresting officer testified. Having reviewed the briefing, applicable law, and evidence presented at the hearing, and being otherwise fully advised in the premises, I find that the Motion is not well-taken and recommend that it be DENIED.

### FACTUAL FINDINGS

On October 1, 2012, Hidalgo County Sherriff's Deputy Gary Lassiter was on duty, in full uniform, in a Hidalgo County Sherriff's Office patrol car parked on Highway 80 near mile

marker 31.  Response [Doc. 45] at 1.  He was running radar on traffic driving through a construction zone, which had a posted speed limit of 35 miles per hour.  *Id.*  At approximately 2:55 p.m., he clocked a white Jaguar traveling 40 miles per hour in the construction zone.  *Id.*  He followed the vehicle until it turned westbound on Interstate 10, engaged his emergency lights, and stopped the vehicle near mile marker 3.  *Id.*

Once stopped, Deputy Lassiter approached the vehicle from the passenger side and asked Defendant—the sole occupant—for his driver's license and registration, which Defendant provided.  *Id.* at 2.  As he spoke with Defendant at the Defendant's car, Deputy Lassiter smelled a strong odor of air freshener.  He observed multiple air freshener sticks in the front air vents, as well as a can of air freshener lying on the front passenger seat.  *Id.*  In Deputy Lassiter's experience,[1] drug smugglers often use air fresheners to mask the odors of narcotics.  *Id.*  The presence of multiple air fresheners raised Deputy Lassiter's suspicions.  *Id.*

Deputy Lassiter asked Defendant to step out of the vehicle and accompany him to his patrol car.  *Id.*  Once there, Deputy Lassiter performed a "wants and warrants" check and advised Defendant that he had stopped him because he was speeding.  *Id*.  Defendant conceded that he had been speeding.  *Id.* at 8, 2.  Deputy Lassiter then told Defendant that he was going to issue a warning ticket.  *Id.* at 2.  As he was writing the ticket, he asked Defendant who owned the vehicle and where he was traveling.  *Id.*  Defendant said that the vehicle belonged to his sister and that he was traveling from Bisbee to Tucson.  *Id.*  He stated further that he was driving through New Mexico to take the scenic route.  *Id.*  Deputy Lassiter engaged the Defendant in some small talk while he finished writing the ticket.  Transcription of Lapel Camera Video of

---

[1] Deputy Lassiter testified at the hearing that he had been a Hidalgo County Sherriff's Deputy for eight years, had made over 100 arrests, and had seized more than 16,000 lbs. of illegal narcotics, mostly marijuana.

Deputy Gary Lassiter [Doc. 45-2] ("Lapel Tr.") at 2:2–12.  He then asked Defendant to initial and sign the ticket, which he did.  *Id.* at 2:16–19.

The fact that the car belonged to a third party heightened Deputy Lassiter's suspicions.  Response [Doc. 45] at 2.  At the evidentiary hearing, he testified that drug smugglers seldom transport drugs in their own vehicles.  They typically use vehicles registered to third parties.  June 4, 2013 Evidentiary Hearing in Tortugas Courtroom at 28:21–28:39 (direct examination of Deputy Lassiter).

Deputy Lassiter also testified that Defendant's route of travel seemed suspicious.  Based on his experience, he knew that Highway 80 northbound from Bisbee is a route that drug smugglers use to avoid United States Border Patrol checkpoints.  Response [Doc. 45] at 2.  He also knew that the direct route between Bisbee and Tucson is approximately 93 miles.  Government's Exhibit 3 (a Google map showing direct route and estimated mileage that was admitted during the evidentiary hearing). Defendant's intended route was approximately 152 miles, or about two hours, longer than the direct route.  Response [Doc. 45] at 2–3.  Finally, Deputy Lassiter was aware that there is a permanent United States Border Patrol checkpoint on the direct route. There is no such checkpoint on Defendant's route (one reason why drug smugglers often use that route).  *Id.*

Once Deputy Lassiter finished writing the warning ticket, he handed it to Defendant along with his driver's license and registration.  *Id.* at 3.  Defendant was cited for speeding in violation of NMSA 1978, § 66-7-301[2] by driving 40 miles per hour in a 35 miles-per-hour zone.

---

[2] NMSA 1978, § 66-7-301, titled "Speed regulation," provides in relevant part:

    A.  No person shall drive a vehicle on a highway at a speed greater than:
        . . . .

3

[Doc. 45-1] at 1. Defendant signed the ticket, acknowledging that "a violation of the law ha[d] been committed." *Id.* Deputy Lassiter testified at the hearing that approximately five minutes passed from the moment when he engaged his emergency lights until he handed back Defendant's license and registration.

Deputy Lassiter then told Defendant, "All right. Take care." Lapel Tr. [Doc. 45-2] at 2:21. Defendant turned and walked back to the Jaguar. Response [Doc. 45] at 3. At the hearing, Defendant testified that he felt that he was free to go at that point. The lapel camera recording shows Defendant walking back to his vehicle, with his back turned to the deputy. Government's Exhibit 5.

As Defendant walked to his vehicle, following exchange took place:

> DEPUTY LASSITER: Hey, Stephen, can I ask you something?
>
> MR. MARTINEZ: Yeah.
>
> DEPUTY LASSITER: I notice you have a lot of air fresheners and stuff in that vehicle. And just based on the route of travel you came, it would have been a lot easier, a lot quicker, to go the other way. Is there something inside that vehicle I need to know about?
>
> MR. MARTINEZ: Nothing at all, sir.
>
> DEPUTY LASSITER: Nothing at all?
>
> MR. MARTINEZ: Nothing at all.
>
> DEPUTY LASSITER: Have you got any personal use marijuana?

---

        (4) the posted speed limit in construction zones . . . .
  B. In any event, speed shall be so controlled by the driver as may be necessary:
     . . . .
        (2) to comply with legal requirements as may be established by the state highway and transportation department or the New Mexico state police division of the department of public safety and the duty of all persons to use due care; and
        (3) to protect workers in construction zones . . . .

>MR. MARTINEZ: No.
>
>DEPUTY LASSITER: Any cocaine?
>
>MR. MARTINEZ: No cocaine.
>
>DEPUTY LASSITER: Do you mind if I check your vehicle real quick? The entire vehicle?
>
>MR. MARTINEZ: Go ahead.
>
>DEPUTY LASSITER: Okay. Do me a favor. About 20 feet up there, can you go stand over there?
>
>MR. MARTINEZ: (Inaudible.)

Lapel Tr. [Doc. 45-2] at 2:22–25, 3:1–23. Deputy Lassiter's lapel camera recording reflects that Defendant waved to his vehicle in an inviting manner when he said, "Go ahead." Government's Exhibit 5.

During the evidentiary hearing, Defendant characterized Deputy Lassiter's tone of voice during this exchange as "polite" and non-aggressive. Defendant testified further that the Deputy was not brandishing his weapon, and that he was the only law enforcement officer present. That testimony was entirely consistent with what is reflected on the lapel camera recording. *See* Government's Exhibit 5.

Defendant testified at the hearing that he did not feel free to leave once Deputy Lassiter asked to search his vehicle. When asked why he felt that way, he replied, "[Be]cause he's an officer." He offered no further explanation for why he felt he was not free to leave at that point.

Deputy Lassiter then proceeded to the Jaguar and opened the rear passenger door. Response [Doc. 45] at 3. He immediately detected the odor of marijuana. *Id.* He then took the car keys from the front passenger seat and used them to open the trunk. *Id.*; Government's

Exhibit 5.  Inside the trunk, he saw large, square bundles wrapped in trash bags, which he knew based on training and experience to be bulk quantity marijuana.[3]  Response [Doc. 45] at 3.  Deputy Lassiter ordered Defendant to get on the ground, handcuffed him, and advised him that he was under arrest.  *Id.*  During a search of Defendant's person incident to the arrest, Deputy Lassiter found a plastic sandwich bag that contained a white powdery substance in Defendant's pants pocket, which Defendant acknowledged was cocaine.  *Id.*  Deputy Lassiter wrote an incident report, which was introduced as Government's Exhibit 7 during the hearing.

## DISCUSSION

Defendant moves to suppress "currency, statements . . ., [and] any other physical evidence [that] are the fruit of the initial illegal seizure and search . . . ."  Motion [Doc. 36] at 10.  Defendant relies on five arguments in support of his Motion.  First, he challenges the seizure of the vehicle on the basis that it was not made pursuant to reasonable suspicion.  *Id.* at 3.  Second, he challenges the officer's questions about Defendant's "dress, work, [and] contents of the vehicle" as being beyond the scope of the investigative detention.  *Id.* at 5.  Third, Defendant challenges the reasonableness of the time to complete the citation for "the failure to signal violation,"[4] asserting that there was no "probable cause" to justify the extended seizure.  *Id.* at 3.  Fourth, he asserts that Defendant did not consent to the extended detention, and argues instead that Defendant was merely submitting to lawful authority.  *Id.* at 7.  Finally, Defendant argues that the search was illegal because there was no valid consent, no search warrant, and no probable cause to support it.  *Id.* at 3, 8–9.

---

[3] Deputy Lassiter testified that the bundles were covered in laundry detergent, which, based on his experience, is often used to mask the odor of narcotics.

[4] Although Defendant's brief references a failure to signal, this appears to be an error because there is no evidence that relates to a failure to signal.  The evidence only reflects a speeding violation.

6

## I.      Standard

In applying the Fourth Amendment's protections against unreasonable searches and seizures, the Supreme Court has identified three categories of police-citizen encounters: "consensual encounters, investigative stops, and arrests." *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000). "Consensual encounters are not seizures within the meaning of the Fourth Amendment, and need not be supported by suspicion of criminal wrongdoing." *Id.* An "investigative detention," also called a "*Terry* stop," *Terry v. Ohio*, 392 U.S. 1 (1968), is an encounter in which police may "stop and briefly detain a person for investigative purposes." *United States v. Sokolow*, 490 U.S. 1, 9 (1989). A traffic stop is a seizure within the meaning of the Fourth Amendment, and it is most analogous to an investigative detention. *United States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995) (en banc); *see also United States v. Polly*, 630 F.3d 991, 997 (10th Cir. 2011) ("For Fourth Amendment purposes, the legality of a traffic stop is assessed pursuant to the framework established in *Terry v. Ohio* . . . ."). Thus, in determining the reasonableness of a traffic stop or an investigative detention, the Court undertakes a dual inquiry: (1) "whether the traffic stop was justified at its inception," and (2) "if the stop was justified, . . . whether the resulting detention was reasonably related in scope to the circumstances which justified the interference in the first place." *Polly*, 630 F.3d at 997 (internal quotation marks omitted).

An officer may extend a traffic stop beyond its initial scope only if during the course of the stop, "(1) the officer develops an 'objectively reasonable and articulable suspicion' that the driver is engaged in some illegal activity, or (2) 'the initial detention . . . become[s] a consensual encounter.'" *United States v. Rosborough*, 366 F.3d 1145, 1148 (10th Cir. 2004) (alterations in

7

original) (quoting *United States v. McRae*, 81 F.3d 1528, 1534 (10th Cir. 1996)).  Furthermore, it is well-settled "that 'the nature of the police-citizen encounter can change—what may begin as a consensual encounter may change to an investigative detention if the police conduct changes and vice versa.'"  *United States v. Lopez*, 443 F.3d 1280, 1284 (10th Cir. 2006) (quoting *United States v. Zapata*, 997 F.2d 751, 756 n.3 (10th Cir. 1993)).

## II. The Traffic Stop.

### a. The Traffic Stop Was Reasonable at its Inception.

A traffic stop is justified at its inception under the Fourth Amendment if

> [1] the stop is based on an observed traffic violation or [2] if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring.  It is irrelevant . . . whether the stop in question is sufficiently ordinary or routine according to the general practice of the police department or the particular officer making the stop.  It is also irrelevant that the officer may have had other subjective motives for stopping the vehicle.  [The] sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.

*Botero-Ospina*, 71 F.3d at 787 (third alteration in original) (internal quotation marks omitted).

Here, Defendant argues that the seizure of Defendant's vehicle was not made pursuant to reasonable suspicion.  Motion [Doc. 36] at 4.  I disagree.  Using radar, Deputy Lassiter clocked Defendant's speed at five miles per hour over the posted speed limit.  The stop was reasonable at its inception based on an observed violation of the posted speed limit.

### b. The Scope of the Questions and Duration of the Stop Were Reasonable.

Defendant argues that the scope of the investigative detention exceeded permissible bounds on two bases: (1) the traffic stop lasted beyond a reasonable amount of time to complete

the citation; and (2) the questions pertaining to Defendant's "dress, work, [and] contents of the vehicle" were not tailored to the purpose of the stop or to confirm or dispel Officer Lassiter's suspicions which prompted the stop in the first place.  Motion [Doc. 36] at 3, 5.

When determining "whether the scope of the traffic stop was 'reasonably related to the circumstances which justified [the stop] in the first place,'" *Polly*, 630 F.3d at 997 (alteration in original) (quoting *United States v. Eckhart*, 569 F.3d 1263, 1273 (10th Cir. 2009)), the focus is "'on the reasonableness of the traffic stop in light of both the length of the detention and the manner in which it was carried out,'" *id.* (quoting *United States v. Valenzuela*, 494 F.3d 886, 890 (10th Cir. 2007)).  Officers are authorized to ask for a driver's license and registration and to ask the driver to exit the vehicle for purposes of officer safety.  *Id.* at 998.  They are also authorized to question the driver "'about matters both related and unrelated to the purpose of the stop, as long as those questions do not prolong the length of the detention.'"  *United States v. Karam*, 496 F.3d 1157, 1161 (10th Cir. 2007) (quoting *United States v. Stewart*, 473 F.3d 1265, 1269 (10th Cir. 2007)).  Moreover, the Court of Appeals for the Tenth Circuit has held that a traffic stop that lasted for 21 minutes and 45 seconds was not unreasonable where, in the course of the stop, the officer performed permissible tasks such as explaining the reason for the stop, obtaining information from occupants of the vehicle, inquiring why a defendant was driving the vehicle, and performing warrant checks on the occupants of the vehicle.  *United States v. Kitchell*, 653 F.3d 1206, 1218 (10th Cir. 2011).

The detention of Defendant was reasonable both as to the length of the stop and the manner in which it was conducted.  The stop lasted for approximately five minutes, which is a reasonable amount of time given the different tasks that Deputy Lassiter completed.  He asked

Defendant to hand over documentation and step out of the vehicle, both of which he was authorized to do during the traffic stop. He also performed a "wants and warrants" check at his vehicle. While writing the warning ticket, he engaged Defendant in some small talk that, though not related to the purpose of the stop, did not prolong the length of the detention. Because the questioning did not prolong the amount of time that it took Deputy Lassiter to prepare the citation, it was permissible. I find, therefore, that the scope and duration of the traffic stop were reasonable.

### III.   The Encounter Following the Traffic Stop.

#### a.   The Encounter Following the Traffic Stop Was a Consensual Encounter.

Generally, "[a] traffic stop may become a consensual encounter, requiring no reasonable suspicion, if the officer returns the license and registration and asks questions without further constraining the driver by an overbearing show of authority." *United States v. West*, 219 F.3d 1171, 1176 (10th Cir. 2000) (citing *United States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir. 1996)). An overbearing show of authority arises where conduct would convey to a reasonable person that "'he or she was not free to decline requests or otherwise terminate the encounter.'" *Id.* (quoting *Hernandez*, 93 F.3d at 1498). For example, "the presence of more than one officer, the display of a weapon, the physical touching of the [suspect], the officer's use of a commanding tone of voice, and the officer's use of intimidating body language" may convey that sense. *United States v. Chavira*, 467 F.3d 1286, 1291 (10th Cir. 2006). An officer is not required to inform a suspect that he or she does not have to respond to the questioning or that the suspect is free to leave. *United States v. Bradford*, 423 F.3d 1149, 1158 (10th Cir. 2005).

The Deputy gave Defendant the ticket, returned his driver's license and registration, and told him, "Take care," at which point Defendant turned to walk back to his car.  At that point, a reasonable person would have believed he was free to leave.  *See Hernandez*, 93 F.3d at 1499 (turning away from the officer demonstrated defendant's belief that he was free to leave, even where questioning took place in officer's patrol car); *see also United States v. Villa*, 589 F.3d 1334, 1340 (10th Cir. 2009) (holding same).  A brief and consensual exchange then took place.  Deputy Lassiter asked Defendant if he could ask more questions, and Defendant responded, "Yeah."  Deputy Lassiter asked whether Defendant had any marijuana or cocaine in the vehicle, and Defendant replied that he did not. Deputy Lassiter then asked Defendant's permission to search "the entire vehicle."  Defendant responded, "Go ahead," while waving his hand at the vehicle in an inviting gesture. Nothing in the exchange would have conveyed to a reasonable person that he was not free to decline the request or otherwise terminate the encounter.  He did not curse at Defendant or use commanding language or an authoritative tone.  Defendant himself characterized the exchange as "polite" and non-aggressive.  The Deputy was the sole officer at the scene and never drew his weapon.  Although Defendant may have subjectively thought he was not free to leave simply because a law enforcement officer was questioning him, that is not the standard.  The standard is whether a reasonable person would have believed he was free to withhold consent.  *West*, 219 F.3d at 1176.  I find, therefore, that the initial traffic stop became a consensual encounter once Deputy Lassiter returned Defendant's license and registration and said, "All right.  Take care." I further find that the nature of the encounter did not change as the result of Deputy Lassiter's continued questioning.

### b. Alternatively, the Deputy Had Reasonable Suspicion to Support a Continued Detention.

Absent consent, an investigative detention may be permissibly expanded beyond the reason for its inception if the officer has a reasonable suspicion, that is, a particularized and objective basis, that the suspect is involved in criminal activity. *United States v. Clarkson*, 551 F.3d 1196, 1201 (10th Cir. 2009). To determine whether an officer has reasonable suspicion, the court must consider the totality of the circumstances known to the officer at that time and must accord the officer appropriate deference in his ability to distinguish between innocent and suspicious actions. *Id.* The Tenth Circuit has recognized the following factors as some that can contribute to reasonable suspicion: the vehicle is registered to a third party who is not present, *United States v. Ludwig*, 641 F.3d 1243, 1249 (10th Cir. 2011); implausible travel plans, *United States v. Simpson*, 609 F.3d 1140, 1148–49 (10th Cir. 2010); and the presence of air fresheners commonly used to mask the odor of marijuana, *United States v. Sanchez-Valderuten*, 11 F.3d 985, 989 (10th Cir. 1993).

Here, even if Defendant had not consented to the extended detention, Deputy Lassiter nonetheless would have had the authority to extend the detention based on a reasonable suspicion that Defendant was engaged in criminal activity. Three factors contributed to the Deputy's reasonable suspicion: (1) the air fresheners in the vents and a can of air freshener on the seat; (2) the Defendant's admission that the car belonged to his sister; and (3) Defendant's long and circuitous route from Bisbee to Tucson through New Mexico. As discussed above, each of these factors suggested drug smuggling activity. Taken together, they provided an objective basis to suspect that criminal activity was afoot. I find, therefore, that Deputy Lassiter had reasonable suspicion to extend the detention in order to dispel his suspicions of criminal activity.

### IV. The Ensuing Search Was Consensual

"A valid search may be made of a vehicle without a warrant or probable cause when a person in control of the vehicle has given his voluntary consent to search." *United States v. Santurio*, 29 F.3d 550, 552 (10th Cir. 1994) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973)); *see also United States v. Zubia-Melendez*, 263 F.3d 1155, 1162 (10th Cir. 2001) ("[A] vehicle may be searched if a person in control of the vehicle has given his voluntary consent to the search."). Whether consent is voluntary is a factual question, "determined by the totality of the circumstances," applying a two-part test: (1) "the government must proffer clear and positive testimony that consent was unequivocal and specific and freely given," and (2) "the government must prove that this consent was given without implied or express duress or coercion." *Id.* (internal quotation marks omitted). However, "'[c]onsent to search may be voluntary even though the consenting party is being detained at the time consent is given.'" *United States v. Dozal*, 173 F.3d 787, 796 (10th Cir. 1999) (alteration in original) (quoting *United States v. Doyle*, 129 F.3d 1372, 1377 (10th Cir. 1997)). Furthermore, "[w]hile a person giving consent to a search may limit the area to be searched, a general consent to search includes closed containers within the vehicle." *Santurio*, 29 F.3d at 553 (citing *Florida v. Jimeno*, 500 U.S. 248 (1991)).

I find that Defendant voluntarily consented to the search of his vehicle. He was engaged in a consensual encounter with Deputy Lassiter. The Deputy asked him whether he would mind if he checked "the entire vehicle." Defendant stated, "Go ahead," waving his hand in an inviting gesture towards the vehicle. There is no evidence that Defendant's consent was procured

through duress or coercion.  I therefore find that the search was consensual and that neither a search warrant nor probable cause[5] was necessary for the search of Defendant's vehicle.

## CONCLUSIONS AND RECOMMENDATION

I find that the stop of Defendant's vehicle was valid at its inception; that the scope of the traffic stop was reasonable as to its duration and how it was conducted; that the encounter following the traffic stop was consensual; that, even if the encounter had not been consensual, the extended detention would have been permissible based on a reasonable suspicion of criminal activity; and that the search of the vehicle was consensual.

**IT IS RESPECTFULLY RECOMMENDED** that Defendant's Motion to Suppress and Memorandum in Support [Doc. 36] be **DENIED**.

---

[5] Under the automobile exception to the Fourth Amendment's warrant requirement, "'police officers who have probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant.'"  *United States v. Vazquez*, 555 F.3d 923, 930 (10th Cir. 2009) (quoting *Florida v. Meyers*, 466 U.S. 380, 381 (1984) (per curiam)).  The test for probable cause is a factual one that, "'relying on a totality of the circumstances, there is a fair probability that the car contains contraband or evidence.'"  *United States v. Chavez*, 534 F.3d 1338, 1344 (10th Cir. 2008) (quoting *United States v. Vasquez-Castillo*, 258 F.3d 1207, 1212 (10th Cir. 2001)).  Once "'the officer[s'] suspicions rise to the level of probable cause, they are empowered to search the entire vehicle, including the trunk and all containers therein that might contain contraband.'"  *Vazquez*, 555 F.3d at 930 (10th Cir. 2009) (alteration in original) (quoting *Chavez*, 534 F.3d at 1345).  Here, given the totality of the circumstances, including the presence of the air fresheners, the improbable route of travel, and the fact that the vehicle was owned by a third party, there may well have been probable cause to search the vehicle even in the absence of consent. However, since the search was consensual, the Court need not rule on the issue of probable cause.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**