IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                                            No. 12-cr-3206 RB

STEPHEN JAMES MARTINEZ,

    Defendant.

**MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Defendant's Motion to Suppress and Memorandum in Support [Doc. 36] ("Motion"), filed May 1, 2013, and on the Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 50] ("PF&RD"), filed June 7, 2013. On June 4, 2013, the Magistrate Judge held a hearing on the Motion. Clerk's Minutes [Doc. 47]. On June 24, 2013, Defendant filed his Objections to Magistrate Judge's Proposed Findings and Recommendations . . . [Doc. 52] ("Objections"). For the reasons stated below, the Court, being fully advised in the premises, will overrule the Objections, adopt the PF&RD, and deny Defendant's Motion.

**PROCEDURAL AND FACTUAL BACKGROUND**

On October 1, 2012, Defendant was arrested on a charge of knowingly and intentionally possessing 197 pounds of marijuana with intent to distribute, in violation of 21 U.S.C. § 841. Criminal Complaint [Doc. 1] at 1. On October 3, 2012, the United States filed a criminal complaint against him alleging the same. *Id.* Defendant subsequently filed the present Motion [Doc. 36] on May 1, 2013, in which he urges the Court to suppress evidence that was gathered at

the scene of the arrest. The Honorable Stephan M. Vidmar, United States Magistrate Judge, held a hearing on the Motion on June 4, 2013, Clerk's Minutes [Doc. 47], and then filed his PF&RD, which recommended denying the Motion. *See generally* PF&RD [Doc. 50].

### A. The Magistrate Judge's Factual Findings[1]

On October 1, 2012, Hidalgo County Sherriff's Deputy Gary Lassiter was on duty, in full uniform, in a Hidalgo County Sherriff's Office patrol car parked on Highway 80 near mile marker 31. United States' Response to Defendant's Motion to Suppress and Memorandum in Support [Doc. 45] ("Response") at 1. At approximately 2:55 p.m., he clocked a white Jaguar traveling 40 miles per hour in a 35-mile-per-hour construction zone. *Id.* He followed the vehicle until it turned westbound on Interstate 10, at which point he turned on his lights and pulled it over. *Id.*

Deputy Lassiter approached the vehicle from the passenger side and asked Defendant—the sole occupant—for his driver's license and registration, which Defendant provided. *Id.* at 2. As he spoke with Defendant at the car, Deputy Lassiter smelled a strong odor of air freshener and observed multiple air freshener sticks in the front air vents, as well as a can of air freshener lying on the front passenger seat. *Id.* In Deputy Lassiter's experience,[2] drug smugglers often use air fresheners to mask the odors of narcotics. *Id.* The presence of multiple air fresheners raised Deputy Lassiter's suspicions. *Id.*

Deputy Lassiter had Defendant exit the Jaguar and follow him to his patrol vehicle. *Id.* at 2. Once there, he told Defendant that he was going to issue a warning ticket. *Id* As he was

---

[1] The Court adopts the factual findings from the PF&RD, [Doc. 50] at 1–6, for the reasons set forth *infra*.
[2] Deputy Lassiter testified at the hearing that he had been a Hidalgo County Sherriff's Deputy for eight years, had made over 100 arrests, and had seized more than 16,000 lbs. of illegal narcotics, mostly marijuana.

writing the ticket, he asked Defendant who owned the vehicle and where he was traveling. *Id.* Defendant said that the vehicle belonged to his sister and that he was traveling from Bisbee to Tucson. *Id.* He stated further that he was driving through New Mexico to take the scenic route. *Id.* Deputy Lassiter engaged the Defendant in some small talk while he finished writing the ticket. Transcription of Lapel Camera Video of Deputy Gary Lassiter [Doc. 45-2] ("Lapel Tr.") at 2:2- 12. He then asked Defendant to initial and sign the ticket, which he did. *Id.* at 2:16–19.

The fact that the car belonged to a third party heightened Deputy Lassiter's suspicions. Response [Doc. 45] at 2. At the evidentiary hearing, he testified that drug smugglers seldom transport drugs in their own vehicles. They typically use vehicles registered to third parties. June 4, 2013 Evidentiary Hearing in Tortugas Courtroom at 28:21–28:39 (direct examination of Deputy Lassiter). The Deputy also testified that Defendant's route of travel seemed suspicious because, based on his experience, he knew that Highway 80 northbound from Bisbee is a route that drug smugglers use to avoid United States Border Patrol checkpoints. Response [Doc. 45] at 2. He also knew that Defendant's intended route was approximately 152 miles, or about two hours, longer than the direct route. Response [Doc. 45] at 2–3. Finally, Deputy Lassiter was aware that there is a permanent United States Border Patrol checkpoint on the direct route. There is no such checkpoint on Defendant's route (one reason why drug smugglers often use that route). *Id.*

Deputy Lassiter finished writing the warning ticket and handed it to Defendant along with his license and registration. *Id.* at 3. Deputy Lassiter testified at the hearing that approximately five minutes passed from the moment when he engaged his emergency lights until he handed back Defendant's license and registration. Recording of June 4, 2013 Hearing

3

("Hearing Recording") at 3:30:39–46 (recorded from proceedings in the Tortugas Courtroom using Liberty Recorder).

Deputy Lassiter then told Defendant, "All right. Take care." Lapel Tr. [Doc. 45-2] at 2:21. Defendant turned and walked back to the Jaguar. Response [Doc. 45] at 3. At the hearing, Defendant testified that he felt that he was free to go at that point. Hearing Recording at 3:12:29–40. The lapel camera recording shows Defendant walking back to his vehicle with his back turned to the deputy. Government's Exhibit 5 (introduced at the June 4, 2013 Motion hearing).

As Defendant walked to his vehicle, the following exchange took place:

> DEPUTY LASSITER: Hey, Stephen, can I ask you something?
>
> MR. MARTINEZ: Yeah.
>
> DEPUTY LASSITER: I notice you have a lot of air fresheners and stuff in that vehicle. And just based on the route of travel you came, it would have been a lot easier, a lot quicker, to go the other way. Is there something inside that vehicle I need to know about?
>
> MR. MARTINEZ: Nothing at all, sir.
>
> DEPUTY LASSITER: Nothing at all?
>
> MR. MARTINEZ: Nothing at all.
>
> DEPUTY LASSITER: Have you got any personal use marijuana?
>
> MR. MARTINEZ: No.
>
> DEPUTY LASSITER: Any cocaine?
>
> MR. MARTINEZ: No cocaine.
>
> DEPUTY LASSITER: Do you mind if I check your vehicle real quick? The entire vehicle?

>   MR. MARTINEZ: Go ahead.
>
>   DEPUTY LASSITER: Okay.  Do me a favor.  About 20 feet up there, can you go stand over there?
>
>   MR. MARTINEZ: (Inaudible.)

Lapel Tr. [Doc. 45-2] at 2:22–25, 3:1–23.  Deputy Lassiter's lapel camera recording reflects that Defendant waved to his vehicle in an inviting manner when he said, "Go ahead."  Government's Exhibit 5.

During the evidentiary hearing, Defendant characterized Deputy Lassiter's tone of voice during this exchange as "polite" and non-aggressive.  Defendant testified further that the Deputy was not brandishing his weapon, and that he was the only law enforcement officer present.  That testimony was entirely consistent with what is reflected on the lapel camera recording.  *See* Government's Exhibit 5.

Deputy Lassiter then proceeded to the Jaguar and opened the rear passenger door.  Response [Doc. 45] at 3.  He immediately detected the odor of marijuana.  *Id.*  When he searched the trunk, he found several large, square bundles wrapped in trash bags, which he knew, based on his training and experience, to be bulk quantity marijuana.[3]  Response [Doc. 45] at 3.  Deputy Lassiter ordered Defendant to get on the ground, handcuffed him, and advised him that he was under arrest.  *Id.*  During a search of Defendant's person incident to the arrest, Deputy Lassiter found a plastic sandwich bag that contained a white powdery substance in Defendant's pants pocket, which Defendant acknowledged was cocaine.  *Id.*

---

[3] Deputy Lassiter testified that the bundles were covered in laundry detergent, which, based on his experience, is often used to mask the odor of narcotics.

**B. The Magistrate Judge's Analysis and Recommended Disposition**

Following the Motion hearing, Judge Vidmar issued his PF&RD recommending that the Motion be denied. PF&RD [Doc. 50] (issued June 7, 2013). His analysis divided the interaction between Deputy Lassiter and Defendant into three stages: the initial traffic stop (ending at the point when the Deputy returned Defendant's license and registration), the encounter immediately following the traffic stop, and the Deputy's request to search the vehicle.

Judge Vidmar found that the traffic stop was reasonable at its inception. PF&RD [Doc. 50] at 8. He also found that the questions and the duration of the traffic stop were both reasonable. *Id.* at 8–10. Defendant did not object to those findings.

Judge Vidmar found that the encounter immediately following the traffic stop was consensual. *Id.* at 11. He found that a reasonable person would have felt free to leave after the Deputy returned the license and registration and said, "All right. Take care." *Id.* And in fact, after Defendant took back his documents, he turned his back to the Deputy and began walking back to his car. *Id.* The Deputy then politely asked if he could ask Defendant something, and Defendant replied, "Yeah." Under these circumstances, Judge Vidmar found that the encounter after the initial traffic stop was consensual. *Id.*

In the alternative, Judge Vidmar found that even if the encounter were not consensual, Deputy Lassiter was still justified in extending his detention of Defendant because the Deputy had a reasonable suspicion that Defendant was involved in criminal activity. *Id.* at 12. Judge Vidmar found that the following facts supported reasonable suspicion of criminal activity: (1) multiple air fresheners in the air vents and a can of air freshener on the seat; (2) Defendant's admission that the car belonged to a third party; and (3) Defendant's long and circuitous route

6

from Bisbee to Tucson through New Mexico. *Id.* Finally, Judge Vidmar found that Defendant voluntarily consented to the search of his vehicle. *Id.* at 13.

### STANDARD FOR OBJECTIONS TO MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

A district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which is objection is made." 28 U.S.C. § 636(b)(1). "[O]bjections to the magistrate judge's report must be both timely and specific to preserve an issue for de novo review by the district court[.]" *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

### A. The Encounter Following the Traffic Stop

Defendant raises several objections to Judge Vidmar's conclusions regarding the encounter following the traffic stop.

First, Defendant objects to the finding that the encounter following the traffic stop was consensual. He argues that he was not free to leave because (a) he subjectively felt that he could not leave, and (b) because Deputy Lassiter testified that even if Defendant had withheld his consent, the Deputy would have detained him anyway. Motion [Doc. 52] at 2, 4–5. Defendant's argument is unpersuasive. Although Defendant may have subjectively felt that he was not free to leave, *Defendant's* subjective state of mind is not the standard. Nor is the *Deputy's* subjective state of mind. The standard is whether a reasonable person would have believed he was free to withhold consent. *United States v. West*, 219 F.3d 1171, 1176 (10th Cir. 2000). On de novo review, the Court concludes that the initial traffic stop became a consensual encounter once Deputy Lassiter returned Defendant's license and registration and said, "All right. Take care." Defendant turned to walk back to his vehicle. *See United States v. Hernandez*, 93 F.3d 1493,

1499 (10th Cir. 1996) (turning away from the officer demonstrated defendant's belief that he was free to leave, even where questioning took place in officer's patrol car).  Deputy Lassiter then asked Defendant if he could question him further, to which Defendant responded, "Yeah." Defendant could have said no but did not.  The encounter following that exchange was consensual.  The Court will therefore overrule Defendant's objections on this point.

Second, Defendant objects to Judge Vidmar's alternative finding that the Deputy had reasonable suspicion to support an extended detention of Defendant.  Specifically, Defendant argues that his route of travel was not suspicious because there were tourist destinations along it, that the only suspicious factor was the presence of air fresheners, and that air fresheners alone cannot support reasonable suspicion. Objections [Doc. 52] at 5.  On de novo review, the Court is not persuaded.  Even if the encounter were not consensual, the Deputy still had reasonable suspicion to support an extended detention based on the totality of the circumstances: (1) the air fresheners in the air vents and a can of air freshener on the seat; (2) the Defendant's admission that the car belonged to a third party; and (3) Defendant's circuitous route from Bisbee to Tucson through New Mexico.[4]  *See United States v. Clarkson*, 551 F.3d 1196, 1201 (10th Cir. 2009) (to determine whether an officer has reasonable suspicion, the court must consider the totality of the circumstances known to the officer at that time and must accord the officer appropriate deference in his ability to distinguish between innocent and suspicious actions).  The Court finds that, under the totality of the circumstances, the Deputy had reasonable suspicion of criminal activity. The Court will therefore overrule Defendant's objections on this point.

---

[4] Defendant does not challenge the factual findings related to these three factors.  He challenges only whether they were sufficient to give rise to reasonable suspicion of criminal activity.

**B. Consent to Search**

Defendant objects to Judge Vidmar's finding that the search of the vehicle was consensual. He argues that it was not consensual but rather a submission to a claim of lawful authority by the Deputy. Objections [Doc. 52] at 6–7 (citing *United States v. Pena*, 143 F.3d 1363, 1367 (10th Cir. 1998)). On de novo review, the Court finds that Defendant's argument is not well-taken. The Deputy asked Defendant whether he would mind if the Deputy checked "the entire vehicle." Defendant responded, "Go ahead," waving his hand in an inviting gesture towards the vehicle. He thus expressed consent by word and deed. Defendant does not allege, and there is no evidence to suggest, that his consent was procured through duress or coercion. *See United States v. Zubia-Melendez*, 263 F.3d 1155, 1162 (10th Cir. 2001) (Whether consent is voluntary is a factual question "determined by the totality of the circumstances," and courts must apply a two-part test: (1) "the government must proffer clear and positive testimony that consent was unequivocal and specific and freely given," and (2) "the government must prove that this consent was given without implied or express duress or coercion." (internal quotation marks omitted)). The Court therefore finds that the search was consensual and that neither a search warrant nor probable cause was necessary for the search of Defendant's vehicle. *See United States v. Santurio*, 29 F.3d 550, 552 (10th Cir. 1994) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973)) ("A valid search may be made of a vehicle without a warrant or probable cause when a person in control of the vehicle has given his voluntary consent to search.").

## CONCLUSION

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendant's Objections to Magistrate Judge's Proposed Findings and Recommendations . . . [Doc. 52] are **OVERRULED**;

**IT IS FURTHER ORDERED** that the Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 50] are **ADOPTED**; and

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress and Memorandum in Support [Doc. 36] is **DENIED**.

**IT IS SO ORDERED**.

_____
**ROBERT C. BRACK**
**United States District Judge**